IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

IN RE:     LIVING HOPE SOUTHWEST
           MEDICAL SERVICES, LLC, Debtor

JAMES J. NAPLES                                              APPELLANT

v.                          Case No. 4:13-CV-04028

RENEE S. WILLIAMS                                             APPELLEE

## OPINION AND ORDER

Before the Court and ripe for consideration on the merits is an appeal from the United States Bankruptcy Court for the Western District of Arkansas.[1]  For the reasons stated herein, the Court affirms the bankruptcy court.

Before delving into the merits of the instant appeal, the Court must address the pending motion for judicial notice (Doc. 52) filed by the Trustee.  Because the Court does not find that the proffered order is necessary for the Court to consider in ruling on the merits of this appeal, and because counsel for Dr. Naples has indicated that the order has been appealed, the Court declines to take judicial notice of the order, and the Trustee's motion (Doc. 52) is DENIED.

## I.    Background

The Court restates, as supplemented, its statement of the procedural and substantive background of this case from its previous Order (Doc. 44).

---

[1] The Honorable James G. Mixon, now deceased, United States Bankruptcy Court for the Western District of Arkansas.

Pinewood Enterprises, L.C. ("Pinewood")[2] is an unsecured creditor of debtor Living Hope Southwest Medical Services, LLC ("LHSW" or "the Debtor"). In 1998 Pinewood, as landlord, and LHSW entered into a lease of certain real property located in Texarkana, Arkansas. LHSW breached the lease agreement, and in the spring of 2006 Pinewood filed a complaint in the Circuit Court of Miller County, Arkansas to recover the property, for a judgment on past-due lease payments, and to pierce the corporate veil of LHSW. On July 18, 2006, the Miller County Circuit Court entered an Order for Immediate Possession. LHSW filed a petition for relief under Chapter 11 of the bankruptcy code on that same date. LHSW's Chapter 11 case was later converted to a case under Chapter 7 of the bankruptcy code on August 15, 2008, and Renee S. Williams ("Williams" or "the Trustee") was appointed as the Chapter 7 Trustee.

In February 2009, the Trustee filed several adversary proceedings ("AP") against numerous defendants related to the debtor, LHSW, including Living Hope Southeast, LLC ("LHSE"), seeking to recover pre-petition and post-petition transfers by LHSW. The Trustee entered into a Settlement Agreement with several of the AP defendants on May 27, 2009 ("the Settlement"). The bankruptcy court granted approval of the settlement over the objections of two unsecured creditors of LHSW, including Pinewood. The settlement, however, was overturned on appeal. The parties then attempted to amend the settlement agreement. The amended settlement was again overturned on appeal. The adversary proceeding was administratively closed on July 19, 2011, but reopened on November 30, 2012. The same day the proceeding was reopened, the Trustee filed a motion to

---

[2] James J. Naples was substituted as appellant in place of Pinewood by order of the Court dated December 12, 2013. (Doc. 44). For the sake of consistency, the Court will refer in this opinion and order to Pinewood. Such references to Pinewood include Naples, as Naples is the successor-in-interest to Pinewood.

amend the complaint in the proceeding, which the bankruptcy court granted on December 3, 2012. The Trustee then filed her third amended complaint, against LHSE only, on December 4, 2012, requesting the bankruptcy court to avoid certain post-petition transfers from LHSW to LHSE and to impose a constructive trust on the avoided transfers. A pre-trial hearing was held on December 18, 2012, at which time the matter was set for trial on January 15, 2013. Pinewood alleges that it was not aware that these events had occurred in the AP until the end of 2012.

On January 4, 2013, the Trustee filed a pretrial brief in which the Trustee more explicitly sought a constructive trust on all current assets of LHSE and on its future net income stream. Allegedly in response to this pretrial brief, Pinewood filed a motion for relief from the automatic stay in LHSE's pending bankruptcy case[3] so that it could move to intervene in the AP in the LHSW bankruptcy. On January 9, 2013, Pinewood filed a motion to continue the AP in order to have sufficient time to gain relief from the stay in the LHSE bankruptcy. Pinewood obtained relief from the stay in the LHSE bankruptcy on January 14, 2013 and filed its motion to intervene in the LHSW adversary proceeding on the same day. The bankruptcy court denied both the motion for continuance and the motion to intervene on January 15, 2013, and then proceeded to trial on the Trustee's third amended complaint against LHSE. Ultimately, the bankruptcy court denied the Trustee's request for a constructive trust but awarded the Trustee an unsecured claim against LHSE in the amount of $1,190,000.

Naples, as successor in interest to Pinewood, now appeals the bankruptcy court's orders denying Pinewood's motions for intervention and continuance as well as the order granting an

---

[3] To complicate matters further, LHSE filed for bankruptcy in the Eastern District of Arkansas in 2012.

unsecured claim to LHSW against LHSE.

## II.    Standard of Review

A federal district court has jurisdiction, pursuant to 28 U.S.C. § 158, to hear appeals from the rulings of a bankruptcy court and may "affirm, modify, or reverse" the bankruptcy court's order "or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013.  Generally, the Court examines the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*. *In re Food Barn Stores, Inc.*, 107 F.3d 558, 561-62 (8th Cir. 1997).  This standard was put into place to "accord[] the findings of a bankruptcy judge the same weight given the findings of a district judge under Rule 52 F.R.Civ.P."  Fed. R. Bankr. P. 8013, advisory committee notes.  The Court should, therefore, look specifically to the standard of review applied by the Eighth Circuit as to the issues raised in this case.  "[W]hether or not a person is entitled to intervention as a matter of right is a question of law that [the Court] review[s] de novo." *Mille Lacs Band of Chippewa Indians v. State of Minn.*, 989 F.2d 994, 998 (8th Cir. 1993).  "[The Court] review[s] the [bankruptcy] court's ruling on the timeliness of a motion to intervene, however, only for abuse of discretion." *Id.*

## III.    Discussion

The resolution of this appeal of what should be a relatively simple issue of intervention was significantly bogged down by the firestorm of early motion practice as well as the amount of unnecessary and extraneous material injected into the designated record by Pinewood.  The Court in this case, and in a previous appeal from the same AP by Pinewood,[4] has found that there is no procedural mechanism that would allow the Court to strike portions of an appropriately designated

---

[4] *In re Living Hope Sw. Med. Servs., LLC*, 2012 WL 79661 at *9-10 (W.D. Ark. Jan. 11, 2012).

record on a bankruptcy appeal.  It appears that Pinewood took the Court's previous order as an invitation to clutter the instant designated record and obfuscate the issues raised in this appeal. While there may not be a procedural mechanism for striking portions of a designated record (and it would be time-intensive and an exercise in frustration for a court to attempt to do so at the earliest stages of appellate litigation), some of the extraneous material designated as a part of the record in this case steps dangerously close to the line for which an attorney may be sanctioned.  Fed. R. Civ. P. 11(b) ("By presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.").  The Court notes that, having waded through the record, it has appropriately limited its review to only those documents that are relevant to the limited issues raised in this appeal.

This appeal was further convoluted by the fact that the attorneys clearly have issues of personal animosity that have infiltrated their filings.  The facts and law are clouded by personal attacks and disingenuous, misleading remarks and arguments.  Neither side ever gives the Court a full, clear, sharply defined picture of what actually happened in the bankruptcy court.  Because of the contentious history of this case and this clouding of the issues, the Court frankly did not know what representations in the filings could be trusted.  However, now having reviewed the relevant portions of the record, the Court has been able to sufficiently piece together the relevant facts to decide the issues raised in the instant appeal.

"On timely motion, the court *must* permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property

or transaction that is the subject of the action, *and* is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, *unless* existing parties adequately represent that interest." Fed. R. Civ. P. 24(a) (emphases added). Therefore, besides timely application, an applicant for intervention must show (1) that the applicant has a recognized interest in the subject matter of the litigation; (2) that the interest is one that might be impaired by the disposition of the litigation; and (3) that the interest is not adequately protected by existing parties. *United States v. Union Elec. Co.*, 64 F.3d 1152, 1160 (8th Cir. 1995).

"Whether a motion to intervene is timely is determined by considering all the circumstances of the case." *Mille Lacs Band*, 989 F.2d at 998. "In determining timeliness, factors that bear particular consideration are the reason for the proposed intervenor's delay in seeking intervention, how far the litigation has progressed before the motion to intervene is filed, and how much prejudice the delay in seeking intervention may cause to other parties if intervention is allowed." *Id*. The Court finds that the bankruptcy court did not abuse its discretion in finding that Pinewood's motion was untimely and the bankruptcy court's denial of Pinewood's motion to intervene should be affirmed on that basis. Although the Court recognizes the unusual and expedited nature of the trial of the AP, Pinewood was aware of the relief sought by the Trustee at the time that the Trustee herself sought relief from the automatic stay in the LHSE bankruptcy. Nothing prevented Pinewood from also filing for relief from the stay at that time and making a more timely motion for intervention in the LHSW AP. Pinewood's argument that it did not know of the need to file a motion to intervene until the Trustee filed the January 4th pre-trial brief is not credible. Pinewood obviously thought its interests were at risk when it objected to the stay being lifted in the LHSE case. Pinewood saw and considered the third-amended complaint at least as of the time it was introduced as an exhibit before

the LHSE bankruptcy court on November 27, 2012.  Ms. William's January 4th pre-trial brief did not, as a legal matter, expand the relief sought in that complaint.  Furthermore, the other parties—LHSW and LHSE—would have been prejudiced by yet another delay in what had already been a needlessly protracted litigation.  The parties would also have been prejudiced, had Pinewood been allowed to intervene, in that presentation of a straightforward issue of post-petition transfers would have been needlessly muddled by interjections from Pinewood regarding extraneous litigation.  The Court finds that, given the totality of the circumstances, the bankruptcy court did not abuse its discretion in finding Pinewood's motion to intervene to be untimely.

The Court also finds that the bankruptcy court should be affirmed as the Court finds there was no error in the bankruptcy's court's finding that Pinewood was not entitled to intervene in the AP proceeding as a matter or right.  Alternatively, the Court finds that the issues raised in this appeal are moot given the bankruptcy court's ultimate ruling on the merits and/or that Pinewood should be judicially estopped from arguing a basis for intervention contrary to the position it took before the bankruptcy court.  *See Gray v. City of Valley Park, Mo.*, 567 F.3d 976, 981-82 (8th Cir. 2009) ("[t]he purpose of the doctrine [of judicial estoppel] is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment" and is an equitable remedy which a court should apply, in its discretion, on a case-by-case basis).  Finally, the Court finds that the bankruptcy court did not abuse its discretion in denying Pinewood permissive intervention.

On December 12, 2013, this Court entered an order that, in part, denied an amended motion by the Trustee to dismiss the instant appeal.  The Trustee moved to dismiss this case based in part on the argument that the appeal was moot because the bankruptcy court granted the relief sought by

Pinewood in its motion to intervene—the bankruptcy court did not impose a constructive trust on any assets of LHSE. The Court denied that motion before the parties had briefed this appeal on the merits and before the Court had the opportunity to conduct a full and thorough review of the record. In doing so, the Court relied, in part, on the representation of counsel for Pinewood, Judy Henry, that counsel for Pinewood was not aware at the time Pinewood sought to intervene in the AP that the Trustee sought a liquidated claim. Having now conducted an exhaustive review of the relevant portions of the record, the Court finds that Pinewood was aware that the Trustee was seeking a liquidated claim at the time it sought intervention and nevertheless expressly limited its interest in intervening in the AP to preventing imposition of a constructive trust on assets of LHSE.

Contrary to Ms. Henry's assertions in her response (Docs. 37-38) to the Trustee's amended motion to dismiss (Doc. 35), the record makes abundantly clear that Ms. Henry was aware—as early as October of 2012—that Ms. Williams was seeking to liquidate LHSW's claim to be collected in the LHSE bankruptcy. Ms. Henry's response represented as follows:

> Pinewood Enterprises, L.C. ("Pinewood") sought intervention to contest the Trustee's request for a constructive trust because that was the only relief that the Trustee sought in her third amended complaint. She did not seek an unsecured claim in the [LHSE] bankruptcy case, so the motion to intervene could not raise that issue, either. Ultimately, both the request for a judgment by the Trustee and the liquidation of the Trustee's claim raised by the bankruptcy court were made *after* the court had already denied the motion to intervene.

(Doc. 38, p. 1). This representation was misleading at best.

The Honorable Aubrey R. Evans, United States Bankruptcy Judge for the Eastern District of Arkansas has been given the unenviable task of presiding over the LHSE Chapter 11 bankruptcy proceedings. On November 27, 2012, Judge Evans held a hearing on Ms. Williams's motion for

-8-

relief from the automatic stay resulting from the LHSE bankruptcy to pursue its claims against LHSE in the AP in the LHSW bankruptcy. (Doc. 49-1). Pinewood objected to the Trustee's motion for relief from stay. At the hearing, Ms. Henry was present representing Pinewood, and Thomas Streetman was present as the attorney for the Trustee. Mr. Streetman made clear from the very beginning of his opening remarks that LHSW was "asking this Court to permit Ms. Williams, as the Trustee of [LHSW] to have relief from stay for only the limited purpose of *reducing to a liquidated claim* a cause of action that she against [LHSE] in a pending adversary proceeding filed in the [LHSW] Chapter 7 proceeding." *Id*. at pp. 7-8. Mr. Streetman repeated this understanding a couple more times during his opening remarks. Jim Smith was present at the hearing representing LHSE. Mr. Smith also made clear in his opening remarks that LHSE had an interesting in having any claims against it liquidated in order to propose a feasible reorganization plan for LHSE. *Id*. at p. 12. In her opening remarks, Ms. Henry clearly acknowledged that the Trustee would be seeking to liquidate its claim, but appeared unconcerned with this eventuality, objecting only to the fact that the Trustee also sought to impose a constructive trust on LHSE's assets: "[LHSW] intends to . . . not simply liquidate its debt to a judgment, but to liquidate its debt to a judgment and then to seek a trust on all the assets of [LHSE] . . . And *that's why* Pinewood does not believe it is appropriate for the Trustee to get relief from the stay . . . ." *Id*. at p. 22. Later in the hearing, the Trustee testified that the purpose of seeking relief from the stay was "to liquidate the claims of the debtor estate of [LHSW] against [LHSE]." *Id*. at p. 31. On cross-examination, Ms. Henry herself asked, after specifically directing the Trustee's attention to LHSW's proposed third amended complaint, "I understood your testimony on direct to be that you want to liquidate the debt, the alleged debt, of . . . [LHSW] against [LHSE], correct?" Ms. Williams responded "[t]hat is correct." *Id*. at p. 49. Judge Evans also

-9-

plainly stated "I am going to make a decision today as to whether I grant relief from stay to Southwest to liquidate its claim; and by that, I mean to set a money amount of its claim, to liquidate that in its own bankruptcy where the alleged post-petition transfers took place." *Id*. at p. 38.  Finally, Ms. Henry recognized that the testimony at the November hearing may have proved cause for relief from the stay "but only to the extent to liquidate the claim . . . Pinewood does not believe that the testimony establishes that [LHSW] should be entitled to litigate in the [LHSW] case to impose a post-petition constructive trust on the assets of the Chapter 11 debtor, [LHSE]." *Id*. at p. 76.  It is abundantly clear that all the attorneys, parties, and Judge Evans understood that the Trustee would be seeking to liquidate its claim against LHSE.  This was clear at the time of the hearing in November 2012, when Judge Evans entered her order granting LHSW relief from the automatic stay, and at all points thereafter.  The citations to other comments evidencing this understanding are too numerous to list all of them here.

Ms. Henry was keenly aware of, and acknowledged her awareness of, the fact that the Trustee would be seeking to liquidate her claim.  Despite that fact, Pinewood sought to intervene in the AP only on the basis that it would object to imposition of a constructive trust over LHSE's assets.  In its motion to intervene, Pinewood clearly stated its position that it should be permitted to intervene as a matter of right in order to prevent the Trustee from imposing a constructive trust on all assets of LHSE.  Pinewood specifically stated that "Pinewood's interest in . . . LHI[5] assets, as a judgment creditor of LHI, and as asserted in pending litigation in the Miller County Action by Pinewood to recover those assets and award a judgment, will be impaired unless Pinewood is allowed to

---

[5] Living Hope Institute, an entity against which Pinewood has a consent judgment in a state court case out of Miller County, Arkansas

intervene." (Doc. 2-9, ¶ 4). At the hearing on Pinewood's motion to intervene, Ms. Henry made clear to Judge Mixon that Pinewood was not asking the bankruptcy court for anything "other than to protect the assets of [LHI] that went into [LHSE]." (Doc. 2-38, p. 15). Because the bankruptcy court did not impose a constructive trust on *any* assets of LHSE, Pinewood's stated interest in intervening in the AP is moot. Additionally, Pinewood is judicially estopped from arguing in this appeal that it should have been allowed to intervene to challenge the Trustee seeking a liquidated claim, contrary to the position taken in the bankruptcy court that Pinewood only sought to intervene to protect against the imposition of a constructive trust.

Alternatively, the Court finds that the bankruptcy court should be affirmed on the basis that Pinewood did not have a protectable interest in the subject matter of the AP that was not adequately protected by the existing parties to the proceeding. To have a cognizable interest as contemplated by Rule 24 of the Federal Rules of Civil Procedure, an applicant for intervention's interest in the subject matter of the litigation must be direct (as opposed to tangential or collateral), substantial, and legally protectable. *Union Elec. Co.*, 64 F.3d at 1161. "The purpose of intervention is to promote the efficient and orderly use of judicial resources by allowing persons, who might otherwise have to bring a lawsuit on their own to protect their interests or vindicate their rights, to join an ongoing lawsuit instead." *United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 840 (8th Cir. 2009) (quotation omitted). "Typically, persons seeking intervention need only carry a minimal burden of showing that their interests are inadequately represented by the existing parties." *Mille Lacs Band*, 989 F.2d at 999 (internal quotation omitted). After reviewing the relevant record, the Court finds that the only arguably protectable interest Pinewood had in the AP was the one it asserted in moving to intervene—to protect against the imposition of a constructive trust on all assets of LHSE.

-11-

Ultimately, that interest was adequately protected and no constructive trust was imposed. The interests Pinewood now asserts on appeal—an interest in challenging any liquidated claim granted to LHSW or its valuation—do not rise to the level of a significant, protectable interest under Rule 24 and, in any event, were adequately aligned with the interests of LHSE and protected by counsel for LHSE.

At the hearing on Pinewood's motion to intervene, as a point of clarification, Ms. Henry stated that Pinewood was seeking to intervene, not as a creditor of LHSW,[6] but as a judgment creditor of LHI and as "a creditor for [LHSE]." (Doc. 2-38, p. 7). Ms. Henry acknowledged that the reason she believed Pinewood's interests were not aligned with LHSE's was because Pinewood was concerned about protecting a different "pot of assets" (any transfers from LHI to LHSE) than LHSE (assets that LHSE has independently generated not from the assets of either LHSW or LHI). *Id.* at pp. 11-12. Indeed, this is the only basis for mandatory intervention that Pinewood alleged in its motion to intervene before the bankruptcy court. (Doc. 2-9, ¶ 4 ("This competing claim to the same assets warrants mandatory intervention.")). Assuming, without finding, that this interest as a judgment creditor of LHI would have mandated that Pinewood be able to intervene in the AP, it is the only arguably protectable interest that the Court can find Pinewood had in the AP—an interest in not encumbering all the assets of LHSE. Apart from that interest, the Trustee for LHSW must be able to litigate the claims belonging to her as Trustee, just as the Court has previously decided in the prior appeals that Pinewood should be able to litigate the claims belonging to Pinewood. Pinewood had no legally protectable interest in obstructing the Trustee's ability to liquidate the claims

---

[6] The Trustee, presumably, would have adequately represented Pinewood's interests as an LHSW creditor.

belonging to the Trustee against LHSE. In fact, Ms. Henry explicitly acknowledged that a third "pot of assets"—assets going solely from LHSW to LHSE—"would be assets over which the Trustee of [LHSW] would have the right to construct a trust upon or recover under the 549 causes of action she's brought." *Id.* at p. 11. There was never an argument that Pinewood had an independent interest in protecting against the Trustee liquidating its claim against LHSE.

In the hearing on Pinewood's motion to intervene, Ms. Henry went so far as to say that Pinewood likely would not have moved to intervene based solely on the third amended complaint in the AP (which is what the bankruptcy court would have looked to in determining what relief, if any, to grant). (Doc. 2-38, pp. 21-22). Rather, Pinewood only felt compelled to intervene upon reading a pre-trial brief filed by the Trustee in which the Trustee stated that she sought a constructive trust on all assets of LHSE. *Id.* Ms. Henry stated "[i]t was the brief on January 4th that changed everything." *Id.* at p. 22. It is painfully clear to the Court that Pinewood's only interest in intervening in the AP was to argue against imposition of a constructive trust over all assets of LHSE. As the Court has already found, these interests were adequately protected by counsel for LHSE in that the bankruptcy court did not ultimately impose a constructive trust on any assets of LHSE, and Pinewood has no basis to appeal denial of intervenion on those grounds. The record makes clear that Pinewood acknowledged the Trustee's right to pursue the causes of action belonging to her and even to liquidate a claim or seek a constructive trust over some assets of LHSE if the evidence supported such relief. It is disingenuous for Pinewood to now come before this Court, burdening the Court with a voluminous record and litigating an issue which Pinewood has essentially already won, only to further delay an already hopelessly protracted litigation. Ultimately, no constructive trust was imposed over *any* assets of LHSE; Pinewood can seek to bring its disputed claim against LHSE to

judgment; and, assuming Pinewood secures a judgment, Pinewood and LHSW can *both* seek to recover on their claims in the LHSE bankruptcy. The assets Pinewood sought intervention to protect have not been encumbered. Pinewood had no other protectable interest in the AP.

The only additional interest that Pinewood now asserts on appeal is an interest in litigating the value of any liquidated claim obtained by LHSW. The valuation of any liquidated claim granted to LHSW is a matter of litigation strategy. Pinewood takes issue with the fact that counsel for LHSE stipulated to a valuation report. Presumably, however, LHSE could have settled with the Trustee without even taking the issue to trial. The Court will not assume that any sort of collusion occurred to the detriment of LHSE's (or Pinewood's) interests, nor does the record support any such finding. While Pinewood can second-guess the LHSE's litigation strategy in hindsight, such criticisms do not support an argument that Pinewood should have been allowed to intervene in the first instance. *Jenkins by Jenkins v. State of Mo.*, 78 F.3d 1270, 1275 (8th Cir. 1996) ("A difference of opinion concerning litigation strategy or individual aspects of a remedy does not overcome the presumption of adequate representation."). In any event, any interest that Pinewood may have had (as a potential claimant in the LHSE bankruptcy) as to valuation were aligned with LHSE's, and the ultimate valuation of $1,190,000 appears to have been reasonable.[7]

As to Pinewood's request for permissive intervention, permissive intervention likewise requires a timely motion. Fed. R. Civ. P. 24(b). The Court has already found that the bankruptcy court did not abuse its discretion in finding Pinewood's motion to be untimely. Furthermore, the Court finds no abuse of discretion in the bankruptcy's court's denial of Pinewood's motion for

---

[7] In fact, in previously challenging the overturned settlements in the AP, Pinewood put on expert testimony arguing that the value of LHSE should have been 2.6 to 2.8 million dollars. (Doc. 3-11. p. 260).

permissive intervention. "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Even assuming that Pinewood met one of the criteria for which permissive intervention would have been allowed under Rule 24(b), it is beyond legitimate dispute that allowing Pinewood to intervene would have unduly delayed the already hopelessly protracted litigation of, at that point in time, a narrow issue involving claims belonging solely to the Trustee that ultimately did not result in a resolution that infringed upon Pinewood's ability to pursue its own claims in state court. Again, the only basis for permissive intervention stated by Pinewood in its motion to intervene before the bankruptcy court was that "LHSE was formed for the purpose of evading payment of creditors of both LHSW and LHI. Therefore, Pinewood has a claim that shares with the main action with [sic] common questions of law and fact. Intervention is necessary to protect and preserve Pinewood's claim for a determination by the Circuit Court of Miller County, Arkansas in the Miller County Action, not here." (Doc. 2-9, ¶ 5). Pinewood's state-court claim was never legitimately threatened by the Trustee's claims in the AP—which by law would have been limited to recovery of fraudulent post-petition transfers or the value thereof[8]—and was, in any event, fully preserved and protected as a result of the bankruptcy court's denial of imposition of a constructive trust on LHSE's assets.

---

[8] This was at least implicitly recognized by the Trustee and Mr. Streetman. Their asserted basis for attempting to impose a constructive trust on all assets of LHSE was that LHSE was created *exclusively* from LHSW's resources, not from LHI's resources. This was argued at trial of the AP (Doc. 2-38, p. 36) and in the Trustee's post-trial brief (Doc. 2-22, ¶¶ 24-26). Whether or not Pinewood intervened, the Court must assume that the bankruptcy court would hold the Trustee to her burden of proof as to fraudulent transfers from LHSW to LHSE and the appropriateness of imposing a trust over any assets of LHSE. It appears the bankruptcy court did just that in denying imposition of a constructive trust. (Doc. 2-34, p. 1 ("there is no proof that [LHSE] is in possession of any of [LHSW's] assets")).

-15-

The bankruptcy court did not abuse its discretion in finding Pinewood's motion to intervene to be untimely; the bankruptcy court correctly found that Pinewood had no basis for intervention as a matter of right; the bankruptcy court did not abuse its discretion in denying permissive intervention by Pinewood; and, any arguably legitimate interest Pinewood may have had for intervening in the AP was adequately protected such that Pinewood's current challenge to the bankruptcy court's denial of intervention is moot.  Pinewood is also judicially estopped from arguing a basis for intervention on appeal contrary to the basis argued before the bankruptcy court.  Because the Court affirms the bankruptcy court's denial of Pinewood's motion to intervene, the Court does not need to reach Pinewood's challenges to the merits of the judgment and findings rendered by the bankruptcy court in the AP.  It is well settled "that only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment."  *Marino v. Ortiz*, 484 U.S. 301, 304 (1988).

For all of the those reasons, IT IS ORDERED that the orders of the bankruptcy court denying Pinewood's motions for intervention and continuance are AFFIRMED, and this appeal is DISMISSED.

IT IS FURTHER ORDERED that the Trustee's motion for judicial notice (Doc. 52) is DENIED.

IT IS SO ORDERED this 14th day of July, 2014.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE

-16-